

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NB:AXB
F. #2020R00946

*610 Federal Plaza*
*Central Islip, New York 11722*

October 4, 2022

By ECF

The Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Manuel Torres Rivas
              Criminal Docket No. 20-494 (GRB)

Dear Judge Brown:

      The government respectfully submits this letter in connection with the sentencing of defendant Manuel Torres Rivas, which is scheduled for October 14, 2022. As set forth in the Presentence Investigation Report ("PSR"), the defendant faces a mandatory minimum sentence of 180 months and an advisory Guidelines range of life imprisonment. The United States Probation Department ("Probation") has recommended a principal sentence of 240 months' imprisonment. The government submits that a sentence within the range of 262 to 327 months would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

    I.    <u>Background</u>

        A.    <u>The Harassment of Minor Victim #1</u>

      On or about September 19, 2019, the Department of Homeland Security, Homeland Security Investigations ("HSI") became aware of a complaint emanating from Global Experience Magnet School in Bloomfield, Connecticut. (PSR ¶ 3.) Specifically, a 13-year-old student ("Minor Victim #1") reported to school officials that, days earlier, an unknown individual using the Snapchat account "Geovanny_z6134" contacted her and made unsolicited sexualized overtures. (<u>Id.</u> ¶¶ 3-4.) School officials contacted local law enforcement, who responded and observed on Minor Victim #1's mobile phone a conversation between Minor Victim #1 and "Geovanny_z6134" concerning the apparent sexual abuse of a minor.

Relevant portions of that conversation are excerpted below:

| | |
|---|---|
| Geovanny_z6134: | Hey, by accident im sorry |
| Minor Victim #1: | Hey, it's okay |
| Geovanny_z6134: | How are you doing |
| Minor Victim #1: | Good, HBU |
| Geovanny_z6134: | Not too good tbh.  Can I trust you? |
| Minor Victim #1: | Oh yea. Why? |
| Geovanny_z6134: | I did something stupid. |
| Minor Victim #1: | U can talk to me about it if you want |
| Geovanny_z6134: | [You swear] you won't tell anyone |
| Minor Victim #1: | I swear |
| Geovanny_z6134: | I touched my little sister |
| Minor Victim #1: | Oh |
| Geovanny_z6134: | Yea |
| Minor Victim #1: | That's tuff what happened after |
| Geovanny_z6134: | We keep doing it |
| Minor Victim #1: | Oh, how old r u and how old is your sister |
| Geovanny_z6134: | Shes 9, me 19 |
| Minor Victim #1: | Oh |
| Geovanny_z6134: | Yes, is me or she was poking her ass up |
| Minor Victim #1: | Nah she was poking her ass up |
| Geovanny_z6134: | She always does that when I don't touch her is like she want me to touch her |
| Minor Victim #1: | Oh |
| [ . . . ] | |
| Geovanny_z6134: | I did something bad |
| Minor Victim #1: | What? |
| Geovanny_z6134: | She sucked me |
| Minor Victim #1: | Oh |
| Geovanny_z6134: | Yes |
| Minor Victim #1: | And what happened after? |

2

      Geovanny_z6134:    I took a video

      Minor Victim #1:    Ok

(Id. ¶ 4.)

      Following the above-quoted dialogue, "Geovanny_z6134" sent Minor Victim #1 a video depicting a young girl, estimated to be between 8 and 10 years old, performing oral sex on an adult male.  (PSR ¶ 5.)

      Pursuant to an emergency disclosure request issued on September 18, 2019, Snapchat disclosed to law enforcement that when the "Geovanny_z6134" account was created on July 30, 2019, it was connected to the internet from Internet Protocol ("IP") Address 68.195.73.244, which was registered to the defendant's residence in Hempstead (the "Hempstead Residence").  (PSR ¶ 5.)

      B.  The Harassment of Minor Victim #2

      Thereafter, on or about June 29, 2020, Snapchat independently reported to the National Center for Missing and Exploited Children ("NCMEC") that approximately 28 videos and images containing child pornography had been uploaded to the platform using the Snapchat account "Geovr19."  (PSR ¶ 6.)

      As set forth in detail in the PSR, these videos and images contained graphic and shocking depictions of child sexual abuse.  (PSR ¶ 14.)  This included a video of a female child estimated to be 3 or 4 years old being anally penetrated by an adult male; multiple videos of a female child estimated to be between 1 and 3 years old having oral sex performed on her by an adult male; and a video of a "late infant/early toddler" being anally penetrated and caused to bleed.  (Id.)

      The circumstances surrounding Snapchat's discovery of this content were substantially similar to the experience of Minor Victim #1, described above.  Specifically, according to NCMEC records, an 11-year-old resident of Nevada ("Minor Victim #2") reported to local law enforcement that an unknown individual using the "Geovr19" account had contacted her via Snapchat and made unsolicited sexualized overtures.  (PSR ¶ 6.)  In substance and in part, the individual told Minor Victim #2 that he contacted her because he wanted to confess to a stranger that he engaged in sexual abuse of his 9-year-old sister.  (Id.) Similar to the statements made to Minor Victim #1, the individual implied that the sister enjoyed the sexual abuse and sent Minor Victim #2 an unsolicited photograph of himself sitting next to a young girl with an erect penis within his pants; he stated to Minor Victim #2 that the girl reacted positively to his erect penis and displayed her buttocks in response.  (Id.) The individual then sent a second unsolicited photograph of his erect penis within his pants and asked Minor Victim #2 if Minor Victim #2 believed the girl would engage in sex acts if he went to "cuddle" with her in that state.  (Id.)

3

On June 28, 2020, Snapchat disclosed to law enforcement that, when the "Geovr19" account was created on October 6, 2019, it too was connected to the internet from the IP Address registered to the Hempstead Residence. (PSR ¶ 6.)

C.  The Defendant's Arrest and Prosecution

On October 2, 2020, United States Magistrate Judge A. Kathleen Tomlinson issued a warrant authorizing law enforcement agents to conduct a search of the Hempstead Residence and electronic devices found therein for evidence of child exploitation crimes.

On October 7, 2020, during the execution of the warrant, agents encountered the defendant, an adult male, who identified himself as the user of the Snapchat accounts that had been used to harass Minor Victim #1 and Minor Victim #2. (PSR ¶¶ 7-8.) The defendant disclosed to the agents sexually explicit videos on his mobile phone, some of which he admitted depicted him and the 9-year-old daughter of his mother's boyfriend ("Minor Victim #3"). (Id. ¶ 7.) At that time, the defendant was arrested and charged with sexual exploitation of a child. (Id. ¶ 8; ECF #1.)

Following the defendant's arrest, a forensic examination of his cellphone revealed numerous items of child sexual abuse material, including 125 videos that featured Minor Victim #3.[1] (PSR ¶ 13.) Detailed descriptions of some of these videos are set forth in the PSR and will not be repeated here. (Id.)

On November 3, 2020, a grand jury in the Eastern District of New York returned a four-count indictment charging the defendant with sexual exploitation of a child and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B), respectively. (ECF #9.) On January 28, 2022, the defendant appeared before this Court and pleaded guilty to Count One of the Indictment, charging sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). (PSR ¶ 1.)

II.  Guidelines Calculation

The Guidelines calculation, as set forth in the PSR, is as follows:

| | |
|---|---|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus:  Victim Under 12 Years Old (§ 2G2.1(b)(1)) | +4 |
| Plus:  Sexual Contact with Victim (§ 2G2.1(b)(2)(A)) | +2 |
| Plus:  Distribution (§ 2G2.1(b)(3)) | +2 |

---

[1] As noted in the PSR, at least one of these videos was filmed in the presence of the defendant's 5-year-old son. (PSR ¶ 13.)

4

| | | |
|---|---|---|
| Plus: | Victim in Defendant's Custody/Supervisory Care (§ 2G2.1(b)(5)) | +2 |
| Plus: | Repeat and Dangerous Sex Offender (§ 4B1.5(b)(1))[2] | +5 |
| Less: | Acceptance of Responsibility (§ 3E1.1(a), (b)) | -3 |
| Less: | Chapter Five Adjustment (Chapter Five, Application n.2)[3] | -1 |
| | Total: | 43 |

(PSR ¶¶ 26-38.)

Based upon a total offense level of 43 and Criminal History Category I, the applicable Guidelines range for the defendant is life imprisonment. (PSR ¶ 82.) The government does not object to the Guidelines calculation in the PSR.[4]

III.    Argument

The nature and circumstances of this case warrant a substantial carceral sentence. The inherent harmfulness in possessing and distributing pornographic images of young children is serious enough. Far from being victimless crimes, those offenses "create a market for child pornography and thus harm children, scarring them for life." United States v. Gouse, 468 F. App'x 75, 78 (2d Cir. 2012) (internal quotation marks and alterations omitted); see United States v. Reingold, 731 F.3d 204, 217 (2d Cir. 2013) ("[W]e cannot view the distribution of child pornography, however accomplished, as anything but a serious crime that threatens real, and frequently violent, harm to vulnerable victims"). But "[c]hild pornography production offenses are extremely serious and ordinarily warrant significantly

---

[2] Section 4B1.5 of the Guidelines provides, in relevant part, that a five-level enhancement is appropriate where: (i) the defendant's crime is a covered sex crime; (ii) neither the Career Offender Guideline nor § 4B1.5(a) (covering repeat sex offenders) applies; and (iii) the defendant engaged in a pattern of activity involving prohibited sexual conduct. See U.S.S.G. § 4B1.5(b)(1).

[3] The application notes to Part A of Chapter Five of the Guidelines provide, in relevant part, that "[a]n offense level of more than 43 is to be treated as an offense level of 43." See U.S.S.G., Ch. 5, Part A, application n. 2. Applied here, since the Guidelines result in a total offense level of 44, the Chapter Five adjustment reduces the overall offense level to 43.

[4] In the plea agreement between the parties, the government estimated the defendant's advisory Guidelines range to be 262 to 327 months' imprisonment. Although the government concedes that Probation's Guidelines calculation is correct, for the reasons stated herein, the government believes that a sentence within the range of 262 to 327 months' is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

5

harsher punishment than possession or even distribution offenses." United States v. Muzio, 966 F.3d 61, 65 (2d Cir. 2020) (affirming 420-month sentence for "reprehensible" production of child pornography offenses).

"As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse." Reingold, 731 F.3d at 216. For these reasons, "the Supreme Court has acknowledged that '[t]he most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties' on all persons in the distribution chain." Id. at 219 (quoting New York v. Ferber, 458 U.S. 747, 760 (1982)).

Unfortunately, this case is notable for the scope of the defendant's criminality—he produced child pornography through his molestation of a 9-year-old girl entrusted to his care; he distributed those images to strangers, exploiting Minor Victim #3 and exacerbating the harm inflicted upon her; and he possessed a collection of child pornography that included not only the videos he created of Minor Victim #3 but also a lurid array of videos and images depicting the sexual abuse of other children at the hands of pedophiles. In these ways, the defendant was not only an active participant in, but also a driver of, the illicit market for child pornography. And the materials comprising his collection, which included depictions of extremely young children—babies described in the PSR as "late infant/early toddler"—being violently raped by adult men, underscore the brutal human toll exacted by that market.[5] The resulting physical, emotional and psychological impact on these child victims is self-evident. It is therefore critical that the Court's sentence reflect the need for deterrence and protection of the public, including and especially those who are vulnerable or might otherwise become victims of sexual exploitation, from similar crimes.

Several aggravating factors warrant the Court's specific consideration here. Initially, the defendant's conduct toward Minor Victim #1 and Minor Victim #2 is prototypical grooming behavior. Indeed, the defendant did not simply distribute child pornography to other adults with a prurient interest in children; he instead targeted prepubescent girls on Snapchat, initiated highly sexualized conversations with them (during which he admitted to molesting Minor Victim #3) and sent them unsolicited images of children being sexually abused. But for the good sense that Minor Victim #1 and Minor Victim #2 had in reporting the defendant's conduct to persons of authority, it is likely that the defendant's overtures could have led to the creation of additional child pornographic

---

[5] The Second Circuit has recognized that adult penetration of prepubescent girls can reasonably be understood to cause physical pain and, as such, is itself violent, sadistic and cruel under the law. See United States v. Martin, 801 F. App'x 803, 807 (2d Cir. 2020) (Summary Order); United States v. Delmarle, 99 F.3d 80, 83 (2d Cir. 1996).

6

material, or worse. This sort of conduct raises unique concerns about the continued dangers this defendant poses to the community. Cf. United States v. Broxmeyer, 708 F.3d 132, 133 (2d Cir. 2013) (Raggi, J., concurring in denial of rehearing en banc) (noting that the district court was entitled to consider "the considerable aggravating factors" supporting a 30-year sentence for attempted production and possession of child pornography, including, inter alia, that the offense conduct "was part of a much larger pattern of sexual exploitation" of minors entrusted to the defendant's care, whom he had engaged "in sexual activities that escalated from the verbally flirtatious to the pictorially pornographic to the criminally assaultive").

These concerns about the defendant's sexual proclivities are buttressed by several additional aggravating factors in the record. First, at least one of the videos the defendant created of Minor Victim #3 was filmed in the presence of the defendant's 5-year-old son, raising serious questions about his self-control in the presence of children. Second, the defendant has clearly been undeterred by those who might be expected to exert moral suasion over him. In that regard, the defendant's wife reported to Probation that she knew "he had a problem" and "has sexual issues," for which she encouraged the defendant to "go for help" but he never did. (PSR ¶ 9.) The wife reported that she was "tired of finding stuff" (presumably, child pornography and/or inappropriate conversations with girls) on the defendant's cellphone and eventually stopped checking for such items. (Id.) Third, this is not the first time the defendant has been arrested for engaging in inappropriate sexual conduct toward a female. As outlined in the PSR, in 2015 he was arrested by the Nassau County Police Department for essentially stalking one of his teachers. (Id. ¶ 40). The defendant, using an online alias, sent four emails of a sexual nature and six pictures of "himself holding his erect penis" to the teacher's business email address at Hempstead High School. (Id.) For this conduct, the defendant was convicted of disorderly conduct and received a four-year conditional discharge—a sentence he was still serving at the time of the instant offense. (Id.)

All of these factors speak to the defendant's proclivity toward reoffending and counsel in favor of a substantial custodial sentence.

IV.      Conclusion

For the foregoing reasons, the government respectfully submits that a sentence between 262 and 327 months' imprisonment is reasonable and appropriate in this case.

                                              Respectfully submitted,

                                              BREON PEACE
                                              United States Attorney

                            By:     /s/ Anthony Bagnuola
                                              Anthony Bagnuola
                                              Assistant U.S. Attorney
                                              (631) 715-7849

cc:     Clerk of the Court (GRB) (by ECF and email)
        Counsel of Record (by ECF and email)
        U.S. Probation Officer Lisa Langone (by email)