**GARY SCHOER**
ATTORNEY AT LAW
NORTH SHORE ATRIUM
6800 JERICHO TURNPIKE, SUITE 108W
SYOSSET, NEW YORK 11791
(516) 496-3500
FAX (516) 496-3530
EMAIL: GSCHOER@AOL.COM

October 6, 2022

**VIA ECF**
Honorable Gary R. Brown
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11729

RE: **UNITED STATES V. MANUEL GEOVANNY TORRES RIVAS**
     Docket No.: **20-CR-494 (GRB)**

Dear Honorable Sir:

Pursuant to the local Rules of this Court, please accept this letter on behalf of Manuel Torres-Rivas in support of his position relating to his impending sentence scheduled for October 14, 2022.

Initially, Mr. Torres-Rivas has received the Presentence Investigation Report (PSR) dated September 8, 2022 prepared by the Probation Department. Respectfully, Mr. Torres-Rivas requests that the Court consider the following factual clarifications/additions to the Offense Conduct portion of the PSR.

PSR paragraph 4, 5 and 6: After initial communications of a sexual nature, including the sending of explicit photographs, to two young females in which he "confessed" to doing "something bad" in having sexual contact with his (fictionalized) little "sister", he voluntarily stopped communicating with both girls. These communications do not reflect "grooming" but rather reflect Mr. Torres-Rivas' confusion about his actions and the

1

sexual feelings he was experiencing and acknowledge that he was aware that those actions were improper. The reaching out to these girls, as well as the communications themselves were fueled by the drinking of alcohol. Because he recognized he had a significant problem, he deleted his Snapchat App on more than two occasions, only to renew the App when again drunk.

PSR Paragraph 13: While there may be 125 videos of Jane Doe on Mr. Torres-Rivas' phone, as reflected in the PSR, many of these are short (i.e 8, 11, 12, 19 second clips) and were cut up from much larger videos. Mr. Torres-Rivas believes, but is not sure, that there were approximately 3 to 4 incidents during each of which approximately 20 minute videos were taken and then cut up. All of the videos were created not for the purpose of creating pornography and not for a commercial purpose. The filming was incidental to the actions and when created the videos were not intended to be distributed.

PSR Paragraph 14: With respect to the last bullet point the two videos taken in Mr. Torres-Rivas' bedroom were of him and his partner, Beylin Inestroza.

PSR Paragraph 15: The videos of Mr. Torres-Rivas' son were not of a sexual nature, but rather innocent videos of a toddler in the bathroom. None of those videos were ever disseminated.

PSR Paragraph 16: The actions of Mr. Torres-Rivas do not establish that he engaged in a pattern of activity so as to warrant a five level adjustment pursuant to USSG § 4B1.5 (b) (1).

Based upon the above, with respect to the Offense Level Computation, PSR Paragraph 35 should be deleted and the Total Offense Level (PSR Paragraph 38) should be level 39 (consistent with the parties Plea Agreement). Further, upon this total Offense Level and a criminal history category of I the Custody Guideline Provisions set forth in Paragraph 82 of the PSR should be 262 to 327 months.

With respect to the Offender Characteristic portion of the PSR, the PSR refers to a mitigation report prepared by Smyth Mitigation & Consulting LLC and notes certain of the information contained in that mitigation report. The entire mitigation report is annexed for the Court's consideration as Exhibit "A". Additionally, an Institutional Course Certificate and updated work Performance Rating are annexed as Exhibit "B".

Not mentioned in the PSR is that Mr. Torres-Rivas was evaluated by Richard B. Krueger, M.D. from the Sexual Behavior Clinic, New York State Psychiatric Institute and Columbia University Department of Psychiatry, an established recognized expert in paraphilic disorders (patterns of atypical sexual arousal and behavior). A copy of Dr. Kruger's report with respect to that evaluation is annexed hereto as Exhibit "C".

That report concludes:

> Overall, it is my opinion that Mr. Rivas would be at low to moderate risk of sexual re-offense in the community. He is highly amenable to sex offender specific treatment and a good candidate for this. He is well within the parameters for supervision by federal probation of sex offenders in the community.
>
> It should be noted that neither incarceration per se nor the length of incarceration is related to the risk of relapse (see article by Nunez et al., appended). In my opinion Mr. Rivas could be readily managed in the community under the usual conditions of supervision by federal probation.

Finally, annexed hereto is a letter from Mr. Torres-Rivas to the Court reflecting this shy, reserved, young man's extreme remorse, self-realization and acceptance of punishment, as well as his desire to accept treatment and turn his "life around." Additionally, annexed is a letter from his now ex-partner and mother of his child, Beylin Inestroza, reflecting the type of giving, loving, responsible person he was to his family prior to his arrest and his internal growth as a result of that arrest and during his pre-trial incarceration. See Exhibit "D" annexed hereto (which includes another letter from a longtime friend).

### NON GUIDELINE CONSIDERATIONS

While Mr. Torres-Rivas is, of course, cognizant of the Guidelines, as well as the recommendation of the Probation Department, the Supreme Court in its decisions in Gall v. United States, 552 U.S. 38 (2007) and Kimbrough v. United States, 552 U.S. 85 (2007) made it clear that extraordinary circumstances are not required to justify a sentence by a District Court outside the advisory Guideline range determined and that only "some weight" need be given to that advisory Guideline range.

3

Thus, this Court has great discretion in fashioning a sentence "sufficient, but not greater than necessary" pursuant to 18 U.S.C. § 3553(a).

The Second Circuit has noted that consideration of the § 3553(a) factors, unlike the Guidelines, permits a sentencing court to view each defendant independently and "make an individualized assessment of the sentence warranted by § 3553(a) based on the facts presented." United States v. Jones, 531 F.3d at 170 (internal quotations omitted). Consequently, it is also proper for sentencing courts to consider arguments that a "Guidelines sentence itself fails properly to reflect § 3553(a) considerations." Id at 172 (quoting Rita v. United States, 551 U.S. 338, 127 S.Ct. at 2465 (2007)).

The Second Circuit has observed that assessing each defendant's individual situation "is not, after all, a precise science." Id. at 174. In United States v. Fernandez. 443 F.3d 19, 29 (2d Cir. 2006), the court similarly recognized that "[consideration of the § 3553(a) factors is not a cut-and-dried process of fact-finding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts." As a result of the various considerations that enter into a sentencing decision, there is no such thing as a so-called right answer. Indeed, the court noted in Jones:

> Rarely, if ever, do the pertinent facts dictate one and only one appropriate sentence. Rather, the facts may frequently point in different directions so that even experienced district judges may reasonably differ, not only in their findings of fact, but in the relative weight they accord competing circumstances. Such reasonable differences necessarily mean that, in the great majority of cases, a range of sentences - frequently extending well beyond the narrow ranges prescribed by the Guidelines - must be considered reasonable.

Pursuant to the factors to be considered as set forth 18 U.S.C. § 3553(a), initially in reviewing the nature of the offense, Mr. Torres-Rivas recognizes the general nature of child pornography crimes, which are, of course, serious and deserve significant punishment. However, the guidelines, herein, in conjunction with the 15 year mandatory minimum required by the instant plea, limit, in light of all of the circumstances of this Defendant and this case, individualized, fair and proportionate sentencing by the Court considering the purposes of sentencing: deterrence, public safety, just punishment and rehabilitation. The mandatory minimum and the Guidelines do not permit the Court to distinguish between the least and worse offenders, between those that create child pornography for exploitive commercial purposes and those who do not, between those who are involved in promoting child prostitution and those who are not, between those who act with pre-meditation and those whose actions are spur of the moment and between those whose acts are for the purpose of producing child pornography and those for whom the production was incidental. It is these kinds of critical distinctions in culpability which have continually led to Courts criticizing the draconian mandatory minimums and guideline ranges in cases similar to this one where Defendants face sentences equally or more severe than Defendants in violent murder cases, and has led the Sentencing Commission to issue reports, including a recent one, questioning the wisdom of the current guideline scheme with respect to child pornography cases; See e.g. United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010)concluding that the child pornography guidelines "eviscerate[s] the fundamental statutory requirement of §3553(a) that district courts consider 'the nature of the offense and the history and characteristics of the Defendant' and violate[s] the principle . . . that courts must guard against unwarranted dissimilarities among sentences for Defendants who have been found guilty of similar conduct."

In viewing the personal characteristics of Mr. Torres-Rivas, the report of the mitigation specialist should be carefully considered by the Court. Ms. Smyth, who spent numerous hours speaking with Mr. Rivas and his family, provides a thorough look into not only his loving family dynamics, but into his own sexual abuse as a child. Additionally, she provides significant insight into Mr. Rivas' current circumstances and attitudes as shaped by the instant case, including his

5

"admission of guilt, his deep remorse and his readiness to explore . . . long overdue, mental health intervention." Ms. Smyth's report concludes:

> He understands that his actions were harmful and that there is no excuse. Manuel has not tried to make any excuse for his actions. He is, for the first time, coming to understand the role that his own experience of childhood sexual abuse has on his mental health and his perceptions of sex and sexuality. His connection between his own childhood sexual abuse and his role as a perpetrator in this matter is in no means an excuse for his actions, but rather an offering of hope that Manuel is someone who can and will benefit from psychological treatment. At the time that Manuel began viewing child pornography, messaging young girls and creating the videos in this case, he was suffering the unique and persistent psychological consequences of untreated childhood sexual abuse and was self-medicating his anxiety and depression with alcohol. Manuel … (has) readily admitted his wrongdoing when confronted in this case and is prepared to be penalized. At the same time, Manuel is ready to receive psychological treatment that is long overdue.

Similarly, in viewing the personal characteristics of Mr. Torres-Rivas the Court should consider the report prepared by Dr. Krueger, a leading expert in the field, concluding that while Mr. Torres-Rivas is diagnosed as having "Pedophilic disorder" and "other specified disruptive, impulse-control and conduct disorder characterized by pornography dependence", nevertheless, in light of the extensive testing of Mr. Torres-Rivas and all of his current circumstances, including the impact of this case and his genuine remorse, "would be at low to moderate risk of sexual re-offense in the community . . . highly amenable to sex offender treatment and a good candidate for this."

As reflected in those reports, as well as Mr. Torres-Rivas' letter to the Court, Mr. Torres-Rivas, currently aware of all that has happened with respect to his own abuse as a child and the inappropriate actions and abuse he has now inflicted on another, is in, and will be able in the future to, control his

feelings and actions, particularly with welcomed mental health treatment. Most importantly, he has acted in this proceeding, without excuses or obstruction, to positively address the charges, and the situation, he faces. Finally, and similarly, Mr. Torres-Rivas has, in fact, exhibited and expressed extreme and genuine remorse and shame during his interactions with Dr. Krueger, Ms. Smyth and me. With the opportunity for introspection and self-awareness he has come to realize how much his actions victimized the child in this case, particularly in light of the sexual abuse that was inflected upon him as a child. As Ms. Smyth reports, he "expressed deep remorse and shame for his actions . . . and acknowledges the harm he caused . . . He stated: 'She might grow up to have problems in her sexual life or her love life, and I would be the one to blame for that. I just feel really guilty for what I did . . .'" Mr. Rivas, clearly, has accepted responsibility for his wrongful, criminal actions and is extremely sorry for all the pain he has caused.

Moreover, this Court should consider as a factor in determining the appropriate sentence herein the conditions of Mr. Torres-Rivas' pre-sentence custody. Courts in this District (as well as the SDNY) have acknowledged that the conditions at MDC, over the time Mr. Torres-Rivas' has been housed there, in light of the pandemic as well as the physical condition of the jail and the almost continuous series of lockdowns, has made pre-trial incarceration harder and more punitive than would otherwise have been the case and has created a hardship which justifies sentencing consideration. Aside from the fact that Mr. Torres-Rivas has had limited family visiting and communications with counsel have been curtailed, of particular concern to him, have been the lack of proper hygiene, nutrition and exercise. Being, for considerable periods of time, locked in his cell for 23 hours per day without the ability to exercise or have social visits is stressful and depressing. Having no soap or wash rags, showers limited to 2 or 3 per week and not being provided clean clothes, limited hot meals (cereal in the morning, either peanut butter or bologna sandwiches for both lunch and dinner) have all been detrimental to his physical health and mental wellbeing. While Mr. Torres-Rivas understands that he is in jail and that his own actions put him there, the conditions are, he believes, "just cruel". They are similar to "third world" jail conditions and violate clearly established law protecting individuals from "needlessly harsh conditions of confinement," Iqbal v. Hasty, 490 F.3d.143, 169 (2d Cir, 2007). See also e.g. United States v.

7

Gonzalez, 18 Cr. 669 (JPO) (Apr. 16, 2021), Dkt. 250 at 17 (time served has been "basically like solitary confinement," "harsher than a usual period," "more punitive," "essentially the equivalent of either time and a half or two time what would ordinarily be served"); United States v. McRae, 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing").

Finally, this Court should consider the fact that Mr. Torres-Rivas will be deported after he has completed the sentence to be imposed in this case. A sentencing Judge may consider deportation as a factor in sentencing, See e.g. United States v. Wills, 476 F.3d 103 (2d Cir. 2007). Moreover, since Mr. Torres-Rivas will serve his sentence under more restrictive conditions as a deportable person and may be ineligible for certain programs provided by the BOP and the law, as well as since he will most probably serve additional time waiting to be deported, his sentence should be mitigated pursuant to the 18 U.S.C. § 3553(a) factors, (particularly 3553(a)(2)(D) focusing on the providing of "needed educational or vocational training, ... or other correctional treatment in the most effective manner").

Clearly, under all of the circumstances of this case, including the combination of all of the above mitigating factors, see e.g. United States v. Rioux, 97 F.3d 648 (2d Cir. 1996), a sentence to the mandatory minimum, 15 years, would reflect all of the facts and circumstances relating to the instant offense and Mr. Torres-Rivas as a person, would promote respect for the law and would provide a just (sufficient but not more than necessary) punishment.

Thus, Mr. Torres-Rivas respectfully requests that, upon all of the above, this Court, considering all of the relevant sentencing issues, facts and circumstances of this case, render a sentence fairly, justly and with compassion and mercy.

Thank you in advance for your consideration of this matter.

Respectfully submitted,

*Gary Schoer*

GARY SCHOER
*Attorney for Defendant*
6800 Jericho Turnpike, Suite 108W
Syosset, New York 11791
(516) 496-3500


TO: AUSA Anthony Bagnuola, Esq.,
    (Via ECF)